WOLF DIETRICH PEDDINGHAUS, Plaintiff-Appellant, v. CARL ULLRICH PEDDINGHAUS *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—99—3401

Opinion filed June 30, 2000.

Butler Rubin Saltarelli & Boyd, of Chicago (Michael A. Stick, James A. Morsch, and Randi L. Ellias, of counsel), for appellant.

Sidley & Austin, of Chicago (Holly A. Harrison, James W. Ducayet, and Joel M. Hammerman, of counsel), for appellees.

JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiff, Wolf Peddinghaus, appeals the circuit court's order granting summary judgment for defendants, Carl Georg Peddinghaus, Caroline Peddinghaus, and Julia Peddinghaus, on plaintiff's fraud action in connection with defendants' purchase of plaintiff's shares of a family trust. On appeal, plaintiff contends that genuine issues of material fact exist precluding the imposition of summary judgment. We reverse and remand for further proceedings.

The following facts are undisputed for purposes of this appeal. Paul and Werner Peddinghaus created the Peddinghaus Corporation (the corporation), which is in the business of designing, manufacturing, and selling machine tools. Paul Peddinghaus later transferred his shares in the corporation to his five children, which included plaintiff and Carl Peddinghaus.

In May 1977, the five children executed a revocable *inter vivos* trust named the Carl Ullrich Peddinghaus Trust (CUP trust). At its formation, the CUP trust had as its corpus 50% of the shares of the corporation. The trust document provided Carl with the express authority to act on behalf of his siblings, including plaintiff, in "all matters concerning" the CUP trust.

In the spring of 1991, Carl asked plaintiff to sell him his shares in the CUP trust. In discussions beginning in May, 1991, Carl told plaintiff that a variety of serious problems negatively affected the performance of the corporation and that the corporation would not pay dividends in the near future because of a risk of double taxation of those dividends in the United States and Germany. Carl also told plaintiff that the corporation constituted a nonperforming asset and that the best way to value the corporation was based upon its paid-in capital; Carl failed to disclose to plaintiff that in addition to its paid-in capital, the corporation had about six million dollars in retained earnings.

During the summer of 1991, Carl informed plaintiff that, for tax

purposes, he preferred that plaintiff sell his shares in the CUP trust to Carl's children, defendants Georg, Caroline, and Caecilia. Carl provided plaintiff with a purchase agreement. The agreement stated that plaintiff would sell his share in the CUP trust at an agreed-upon price of $370,762 and that defendants would purchase said shares by transferring their interest in another partnership to plaintiff, along with 95,000 shares in additional bonds. Plaintiff signed the purchase agreement, effective September 3, 1991, and transferred his shares in the CUP trust to defendants. In December 1991, plaintiff also assigned defendants his interest in Structural Steel Systems, Ltd., a limited partnership established by the corporation.

In February 1996, plaintiff obtained the 1991 tax return for Peddinghaus corporation. The tax return showed the corporation had retained earnings of about $6 million in 1991. The value of the corporation was at least $8.6 million in 1991, and thus plaintiff's interest in the corporation, at the time he transferred his shares in the CUP trust to defendants for $370,762, was about $973,200.

Plaintiff filed a fraud action against defendants. Plaintiff alleged that Carl's representations to him in May 1991 regarding the corporation's poor performance, limited value, and inability to pay dividends, were material in his decision to execute the purchase agreement and transfer his shares in the CUP trust to defendants for $370,762. Each of those representations was false, in that the corporation was operating profitably, the fair value of the corporation far exceeded the corporation's paid-in capital, and dividends could have been paid to the shareholders.

In count I (fraudulent inducement against defendants), plaintiff alleged Carl was acting as defendants' agent during the negotiations with plaintiff when he fraudulently induced plaintiff to sell his interest in the CUP trust to defendants. Alternatively, plaintiff alleged that even if defendants did not expressly authorize Carl to negotiate the purchase of plaintiff's CUP trust shares on their behalf, they later ratified his efforts and thus are liable for damages.

Count II, a breach of fiduciary duty count against Carl, is not an issue on this appeal.

Count III sought rescission of the purchase agreement based upon defendants' alleged fraud.

Count IV alleged that defendants were unjustly enriched through their continued possession of plaintiff's interest in the CUP trust.

The circuit court granted defendants' motion under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)) to dismiss counts I, III, and IV for failure to state a cause of action. Plaintiff appealed, and on March 16, 1998, we reversed and remanded,

holding that plaintiff's complaint was sufficient to state a cause of action for fraudulent inducement, ratification, rescission and unjust enrichment. *Peddinghaus v. Peddinghaus*, 295 Ill. App. 3d 943 (1998). On remand, plaintiff filed a second amended complaint, which realleged counts I through IV and added counts V and VI. Counts V and VI alleged that defendants had failed to provide adequate consideration for plaintiff's assignment of his interest in Structural Steel. Following the completion of discovery, defendants filed a motion for summary judgment on plaintiff's second amended complaint, arguing that there were no genuine issues of material fact and that as a matter of law they could not be.held liable for Carl's alleged fraud. The circuit court granted defendants' motion for summary judgment on counts I, III, IV, V, and VI. Plaintiff filed this timely appeal.

First, we address the circuit court's order granting summary judgment on counts I and IV of plaintiff's second amended complaint, which sought recovery against defendants based on *respondeat superior* for Carl's fraud in negotiating the purchase of plaintiff's shares in the CUP trust. Summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party, the pleadings, depositions, and admissions on file reveal that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 349 (1998). The standard of review in cases involving summary judgment is *de novo*. *Ragan*, 183 Ill. 2d at 349.

■ Under common-law principles of *respondeat superior*, a principal is liable for the deceit of his agent, if committed in the very business the agent was appointed to carry out, even where the agent's specific conduct was carried out without knowledge of the principal. *Letsos v. Century 21-New West Realty*, 285 Ill. App. 3d 1056, 1069 (1996). Plaintiff argues that a factual question exists regarding whether Carl was defendants' agent in May 1991, when he fraudulently induced plaintiff to sell his shares of the CUP trust. Specifically, plaintiff points to evidence that Carl had power of attorney over some of defendants' financial accounts, and plaintiff contends that such power of attorney raises a question of material fact as to whether Carl was defendants' agent in May 1991 when he committed fraud against plaintiff. Therefore, plaintiff contends that the circuit court erred in granting summary judgment for defendants on counts I and IV.

■ To establish defendants' liability under *respondeat superior*, plaintiff must show that Carl actually acted in his capacity as defendants' agent (as opposed to acting on his own behalf) in May 1991 when he first negotiated the purchase agreement with plaintiff. *Letsos*, 285 Ill. App. 3d at 1069. However, Carl filed an affidavit in

which he stated that he was acting on his own behalf, not as an agent for defendants, when he conducted his initial discussions with plaintiff in May 1991. Defendants filed affidavits in which they each swore that they did not authorize Carl to negotiate the purchase of plaintiff's interest in the CUP trust on their behalf in May 1991. Plaintiff testified in his deposition that in May 1991, he thought that Carl was entering the purchase agreement on his (Carl's) own behalf. Plaintiff points to no evidence contradicting Carl's, defendants', and plaintiff's own testimony that Carl was acting on his own behalf and not in his capacity as defendants' agent when negotiating with plaintiff in May 1991. Accordingly, plaintiff's first argument against summary judgment fails.

Plaintiff's next argument against summary judgment relates to the period between June 1991 and September 1991. Carl gave conflicting testimony in his deposition regarding whether his tax advisors and the German Ministry of Finance informed him between June 1991 and September 1991 that dividends issued by the corporation would not be subject to taxation in Germany. Portions of Carl's deposition testimony indicate that he *did* receive information that dividends issued by the corporation would not be subject to taxation in Germany; however, other portions of Carl's testimony indicate that the information he received about issuing dividends was inconclusive as to the tax consequences in Germany. Carl also gave conflicting testimony as to whether he told plaintiff about the information he received.

■ Plaintiff argues that Carl's deposition testimony raises a question of material fact about whether Carl fraudulently failed to tell plaintiff that he had received information, between June, 1991, and September, 1991, that dividends issued by the corporation would not be subject to taxation in Germany. Plaintiff also argues that a question of material fact exists concerning whether Carl was acting as defendants' agent between June 1991 and September 1991 and, thus, whether defendants are liable in *respondeat superior* for Carl's fraud. In response, defendants concede that a question of fact exists concerning whether Carl was acting as defendants' agent between June 1991 and September 1991. However, defendants argue that Carl's failure to inform plaintiff about the information he received concerning German taxation of dividends was not fraud.

A party who makes a statement that at the time is true, but who subsequently acquires new information that makes it untrue or misleading, must disclose such information to anyone whom he knows to be acting on the basis of the original statement or be guilty of fraud. *Williams v. Chicago Osteopathic Health Systems*, 274 Ill. App. 3d 1039, 1050 (1995). Here, Carl told plaintiff in May 1991 that the

corporation would not pay dividends in the near future because of a risk of double taxation in the United States and Germany. Acting on this information, plaintiff sold his shares in the CUP trust to Carl effective September 1991. Carl's deposition testimony raises a question of material fact as to whether he was informed between June 1991 and September 1991 that the corporation's dividends were exempt from taxation in Germany; if he acquired such information, Carl had the duty to disclose this information to plaintiff. If Carl failed to do so, then he is guilty of fraud. See *Williams*, 274 Ill. App. 3d at 1050. A question of material fact also exists as to whether Carl was acting as defendants' agent from June 1991 to September 1991; if Carl was acting as defendants' agent, then defendants are liable in *respondeat superior* for Carl's fraud. Accordingly, since questions of material fact exist, we reverse the circuit court's order granting summary judgment for defendants on counts I and IV and remand for further proceedings.

■ Defendants argue that plaintiff's attempt to hold them liable for Carl's failure to correct his pre-agency statements regarding German taxation of the corporation's dividend payments is, in effect, "a convoluted attempt to do an end-run around [our prior opinion in *Peddinghaus*, 295 Ill. App. 3d at 948]." *Peddinghaus* held that a principal cannot be held liable for an agent's pre-agency misrepresentations unless the principal has ratified the agent's actions with full knowledge of all material facts of the unauthorized transaction. *Peddinghaus*, 295 Ill. App. 3d at 948. Defendants argue they had no knowledge of Carl's pre-agency statements, they never ratified those statements and, thus, they cannot be held liable therefor.

Contrary to defendants' argument, plaintiff here seeks to hold defendants liable for acts committed by Carl *during* the agency period (June 1991 to September 1991), specifically, his failure to tell plaintiff about new information received during the agency period that made untrue or misleading his May 1991 statement to plaintiff regarding the tax treatment of the corporation's dividend payments. As discussed, defendants *can* be held liable for the conduct of their agent, Carl, during the agency period. Thus, our discussion in our earlier opinion in *Peddinghaus* regarding ratification of pre-agency conduct is inapposite.

■ Defendants argue that the circuit court properly granted summary judgment on counts I and IV of plaintiff's second amended complaint because those counts are barred by *laches*. *Laches* is an equitable doctrine that precludes the assertion of a claim by a litigant whose unreasonable delay in raising that claim has prejudiced the opposing party. *Tully v. State*, 143 Ill. 2d 425, 432 (1991). Application of the *laches* doctrine requires a showing of lack of due diligence by the

party asserting the claim and prejudice to the opposing party resulting from the delay. *Tully*, 143 Ill. 2d at 432; *People v. Wells*, 182 Ill. 2d 471, 490 (1998). The reviewing court reviews the record *de novo* to determine whether questions of fact exist that preclude summary judgment on the basis of *laches*. See *Zimmer v. Village of Willowbrook*, 242 Ill. App. 3d 437 (1993).

■ Here, a question of material fact exists as to when plaintiff should have discovered Carl's fraud. Defendants contend that plaintiff should have discovered Carl's fraud in 1992, when plaintiff first learned that the corporation had made a dividend distribution. Plaintiff argues that he was unable to learn of Carl's fraud until 1995, when plaintiff first learned about the size of the corporation's retained earnings. The resolution of this factual issue is relevant as to whether plaintiff's delay in filing suit until 1996 was reasonable and, thus, whether *laches* applies.

Also, it is well established that he who requests equity must do equity. *Daiwa Bank, Ltd. v. La Salle National Trust, N.A.*, 229 Ill. App. 3d 366, 383 (1992). Here, questions of material fact exist regarding whether defendants, through their agent Carl, acted in an equitable manner toward plaintiff. If defendants acted wrongfully, then their claim for equitable relief is inappropriate. *Daiwa Bank*, 229 Ill. App. 3d at 383. Accordingly, since questions of material fact exist, defendants' argument for summary judgment on the basis of *laches* fails. As discussed, we reverse the circuit court's order granting summary judgment on counts I and IV of plaintiff's second amended complaint and remand for further proceedings.

■ Next, we address the circuit court's order granting summary judgment on count III of plaintiff's second amended complaint. Count III seeks the equitable rescission of the purchase agreement. A contract may be rescinded only where the court is able to place each side in the status quo *ante*, the status before the contract. *Lempa v. Finkel*, 278 Ill. App. 3d 417, 426 (1996). Defendants argue that they cannot be placed in the status quo *ante*, because plaintiff admittedly has sold the bonds and other property that defendants gave to him as consideration under the agreement. Therefore, defendants contend that the circuit court's order granting summary judgment on count III should be affirmed.

■ Restoring the parties to the status quo *ante* requires each party to return to the other the value of the benefits received under the rescinded contract. *Lempa*, 278 Ill. App. 3d at 426; *Newton v. Aitken*, 260 Ill. App. 3d 717, 720 (1994). Here, although plaintiff no longer has the bonds and other property given to him by defendants, he may repay defendants the value of those bonds and property and thereby

restore them to the status quo *ante.* Accordingly, defendants' argument for summary judgment on count III fails.

■ Next, we address the circuit court's order granting summary judgment on counts V and VI of plaintiff's second amended complaint, which alleged that defendants had failed to provide adequate consideration for plaintiff's assignment of his interest in Structural Steel. The written agreement transferring plaintiff's interest in Structural Steel to defendants states that the transfer was pursuant to "good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged." However, the agreement does not identify the consideration allegedly received. Carl testified in his deposition that the consideration was the bonds and other payment given to plaintiff as part of the purchase of his shares in the CUP trust. Plaintiff indicated in his deposition, though, that he received *no* financial consideration. Accordingly, a question of material fact exists as to whether plaintiff received consideration for his assignment of his interest in Structural Steel. Therefore, we reverse the circuit court's order granting summary judgment to defendants on count V of plaintiff's second amended complaint and remand for further proceedings.

Defendants argue that *laches* applies to bar count V. As discussed earlier in this opinion, questions of material fact exist precluding summary judgment on the basis of *laches*.

At oral argument on this case, defendants argued that the equitable claims in plaintiff's complaint (*i.e.*, the rescission and unjust enrichment counts) should be analyzed separately to determine whether the circuit court abused its discretion in denying plaintiff equitable relief. Defendants argued that they were not active wrongdoers in this case and, therefore, the circuit court did not abuse its discretion in granting summary judgment on the equitable claims.

■ As discussed, the reviewing court reviews the record *de novo* to determine whether questions of material fact exist. Here, questions of material fact exist as to whether defendants, through their agent Carl, defrauded plaintiff out of his shares in the CUP trust and paid him about one-third of the shares' market value. Rescission is an appropriate remedy where there has been some fraud in the making of the contract. *Pinelli v. Alpine Development Corp.*, 70 Ill. App. 3d 980, 1000 (1979). Accordingly, the circuit court erred in granting summary judgment on plaintiff's rescission counts. We reverse and remand.

■ Defendants' fraud, if proved, also constitutes unjust enrichment. See *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160 (1989) (defendant is unjustly enriched when he retains a benefit to plaintiff's detriment, and defendant's retention of

the benefit violates the fundamental principles of justice, equity, and good conscience.) Accordingly, the circuit court erred in granting summary judgment on plaintiff's unjust enrichment count. We reverse and remand.

■ Plaintiff asks that this case be reassigned to a different judge upon remand. The trial judge in this case has ruled on substantial issues and therefore plaintiff is entitled to a change of venue only if he can demonstrate actual prejudice. *In re Marriage of Hartian*, 222 Ill. App. 3d 566, 569 (1991). The only grounds alleged by plaintiff in support of a change of venue are the judge's prior adverse rulings against him. Prior adverse rulings by a judge against a party are not sufficient grounds to support a change of venue. *Hartian*, 222 Ill. App. 3d at 569-70. Therefore, we decline to enter any directions concerning the court assignment of this case on remand.

For the foregoing reasons, we reverse the circuit court's order granting summary judgment to defendants on counts I, III, IV, V, and VI of plaintiff's second amended complaint and remand for further proceedings.

Reversed and remanded.

ZWICK, P.J., and BUCKLEY, J., concur.