Bobby JONES, Plaintiff,

v.

FLEETWOOD MOTOR HOMES, Crystal Valley, RV, Inc., and Ford Motor Company, Defendants.

No. 98 C 3061.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 2, 2000.

Charles Middleton Shepherd, Loftus & Saltzberg, P.C., Adam Jacob Krohn, Gregory Howard Moss, Scott Michael Cohen, Krohn & Moss, Ltd., Stephen R. Auten, Law Office of Stephen R. Auten, Chicago, IL, for Plaintiff.

Paul E. Wojcicki, Jason Lorne Kennedy, Kathleen Mary McDonough, Segal, McCambridge, Singer & Mahoney, Ltd., Kevin Brian Duckworth, Stephanie R. Gaines, Timothy Ray, Hinshaw & Culbertson, Karen C. Wallace, Kevin B. Duckworth & Associates, P.C., Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

In this action, plaintiff Bobby Jones claimed that a 1995 Pace Arrow motor home (the "Arrow") that he purchased from defendant Crystal Valley RV, Inc. was defective and was not timely and adequately repaired. Also named as defendants were Ford Motor Company and Fleetwood Motor Homes, the manufacturers of, respectively, the Arrow's chassis and coach. Both Fleetwood and Ford provided written warranties for their respective components of the Arrow. Following a partial grant of summary judgment, *see* *Jones v. Fleetwood Motor Homes*, 1999 WL 999784 (N.D.Ill. Oct. 29, 1999) ("*Fleetwood I*"), the counts that remained were: (I) breach of written warranty claim against Fleetwood pursuant to the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*; (III) Magnuson–Moss revocation of acceptance claim against Fleetwood; (IV) Magnuson–Moss revocation of acceptance claim against Crystal; (V) Magnuson–Moss implied warranty of merchantability claim against Crystal; and (VI) Magnuson–Moss breach of written warranty claim against Ford. As was set forth in *Fleetwood I*, 1999 WL 999784 at *2, the Count III and IV revocation claims were not truly separate counts, but were possible equitable relief that could be granted if plaintiff was successful on, respectively, Count I and Count V. Because such relief was equitable, it would be an issue for the court, not a jury.

Counts I, V, and VI were tried to a jury, with the issue of revocation reserved for the court in the event that plaintiff was successful on his claim against Fleetwood or Ford. Following the trial, the jury returned verdicts in favor of Crystal Valley and Ford, but against Fleetwood. The jury awarded $1,250 in damages for loss of use of the coach [1] and $3,750 in damages for related aggravation. The jury awarded no damages for diminished value of the coach or for incidental damages related to the coach.[2] Judgment was entered on the jury's verdict. Thereafter, Fleetwood timely moved for judgment as a matter of law. Plaintiff timely moved to amend the judgment to instead award him refund and rescission as relief. Additionally, plaintiff has moved for statutory attorney fees and costs as against Fleetwood. *See* 15 U.S.C. § 2310(d)(2). Fleetwood, pursuant to Fed. R.Civ.P. 68, and Crystal Valley, pursuant to Fed.R.Civ.P. 54, have moved for attorney fees and costs.[3]

*Fleetwood's Motion for Judgment as a Matter of Law*

Fleetwood raises three grounds in support of its motion for judgment as a matter

---

1. The jury instructions defined "loss of use" damages as "the value of not having the Arrow available for use when inoperable and being serviced."

2. The jury instructions defined "incidental damages" as "expenses reasonably incurred in transporting the Arrow to Crystal for re- pairs to be performed and any expenses reasonably incurred during any breakdown on the road."

3. None of the parties complied with this court's rules regarding fee petitions. *See* Loc. R. 54.3. Nevertheless, the fee petitions will be addressed on their merits.

of law: (1) the evidence could only support the conclusion that repairs to the coach were made in a timely manner; (2) Fleetwood's written warranty contained an effective disclaimer of consequential damages, including loss of use; and (3) there was insufficient evidence to support that plaintiff suffered any loss of use.

In deciding a post trial motion for judgment as a matter of law, the standard is whether the evidence presented, combined with all reasonable inferences permissibly drawn, is legally sufficient to support the verdict when viewed in the light most favorable to the nonmovant. Fed.R.Civ.P. 50(b); *Mathur v. Board of Trustees of Southern Illinois University*, 207 F.3d 938, 941 (7th Cir.2000); *Collins v. Kibort*, 143 F.3d 331, 335 (7th Cir.1998); *Gagan v. American Cablevision, Inc.*, 77 F.3d 951, 960 (7th Cir.1996). In other words, the test is whether no rational jury could have returned a verdict for the plaintiff. *Mathur*, 207 F.3d at 941; *Emmel v. Coca–Cola Bottling Co. of Chicago*, 95 F.3d 627, 630 (7th Cir.1996). The court may not reweigh the evidence, resolve conflicts in the testimony against plaintiff, or override the jury's determinations as to the credibility of witnesses. *Grassi v. Information Resources, Inc.*, 63 F.3d 596, 599 (7th Cir. 1995); *Soto v. Adams Elevator Equipment Co.*, 941 F.2d 543, 549 (7th Cir.1991); *Anderson v. Gutschenritter*, 836 F.2d 346, 348 (7th Cir.1988).

The full written warranty[4] of Fleetwood, which manufactured the coach of the Arrow, provides: "Your new motor home, including the structure, plumbing, heating and electrical systems, and all appliances and equipment installed by the manufacturer, is warranted under normal use to be free from manufacturing defects in material or workmanship." The warranty was for one year or 15,000 miles, whichever came first. In large print, the warranty also states that it does not cover "transportation to and from dealer or manufac-

turing plant location, loss of time, inconvenience, commercial loss, loss of use, towing charges, bus fares, vehicle rental, incidental charges such as telephone calls or hotel bills, or other incidental or consequential damages."

As to the claim against Fleetwood, the jury was instructed that it had to find all of the following by a preponderance of the evidence: "(1) The Arrow's coach malfunctioned; (2) The malfunction was caused by a defect in the parts or workmanship of the Arrow's coach; (3) Plaintiff timely presented the Arrow to an authorized repair service with a request that the malfunction be repaired; (4) Fleetwood failed to repair or replace the parts in accordance with the warranty after a reasonable number of attempts; and (5) As a proximate result, plaintiff suffered economic damages." Fleetwood contends the fourth element was not proven because it was not shown that the repairs were not completed within a reasonable number of attempts.

Fleetwood points to the expert testimony that was presented at trial. It characterizes the testimony of plaintiff's expert as offering "the general 'opinion,' based on his review of an unidentified portion of the repair documents, that [the Arrow] had undergone an excessive amount of repairs, but did not explain the basis for that opinion. He did not specifically opine that the coach had undergone an excessive amount of repairs." Fleetwood Motion for Judgment as a Matter of Law at 2. Fleetwood characterizes its own expert's testimony as being a more thorough analysis of the repair history and as stating the conclusion that all repairs were completed within a reasonable number of attempts. Plaintiff does not expressly disagree with Fleetwood's description of the expert testimony. Instead, plaintiff points to the repair history itself.

Plaintiff is correct that expert testimony was not required to prove that the repairs

4. Because Fleetwood's warranty is designated as a "full one-year/15,000 mile warranty," by law it incorporates the provisions of 15 U.S.C. § 2304. *See* 15 U.S.C. § 2304(e).

were not completed within a reasonable period of time. *See Burrus v. Itek Corp.*, 46 Ill.App.3d 350, 4 Ill.Dec. 793, 360 N.E.2d 1168, 1171 (1977); *Blake v. Federal Way Cycle Center*, 40 Wash.App. 302, 698 P.2d 578, 581, *review denied*, 104 Wash.2d 1005 (1985). Whether the number of attempts to complete a repair was unreasonable is not an issue that necessarily requires expert testimony. An expert's testimony may be helpful in explaining the difficulties of completing a particular repair, but a jury does not necessarily need expert assistance in determining whether the number of attempts is unreasonable.

 Construing the evidence in plaintiff's favor, it showed the following. Plaintiff purchased the Arrow on April 26, 1995. Twelve days later, repairs were attempted on the kitchen cabinet, fog lights, leveling jacks, radio, reading lights, driver's side window shades, passenger side window shades, rear monitor, and suspension. The Arrow was returned on May 18, but five days later, it was in for repairs to the leveling jacks, kitchen cabinet, reading light, and radio. On May 26, plaintiff again had the Arrow. On June 9, the Arrow was in for repairs to the generator, governor control, transfer switch, and electrical circuits. The Arrow was out of service until June 9. On June 19, the Arrow was in for repairs to the roof, compartment door, window valence, couch, duct work, shower faucet, front bumpers, antenna, and kitchen sink. That work was conducted until June 28. On July 31, the Arrow was back in for repairs to the roof, suspension, compartment door, couch, fog lights, entry step, right front window, front bumper, gas compartment, driver's door, and kitchen sink. This time, the Arrow was kept for four weeks. On November 10, the Arrow was in for repairs to the hydraulic jacks, entry step, engine battery, and driver's door. It was not returned until November 29. On March 27, 1996, repair work was done to the furnace. Although beyond the one-year warranty period, the generator was again repaired on April 30, 1996. A reasonable jury could find that Fleetwood did not make the repairs within a reasonable number of attempts. Fleetwood is not entitled to judgment as a matter of law based on failure to adequately prove the fourth element.

 Fleetwood next contends that the fifth element is not satisfied because plaintiff failed to prove loss of use damages. There is no dispute that the evidence showed that the Arrow was unavailable for approximately 75 days while in the shop being repaired.[5] Fleetwood contends this is not sufficient. It contends that it must also be shown that the Arrow would have been used had it been available on those days. Fleetwood contends that plaintiff was never forced to cancel any planned trips or vacations and that the repairs were performed when the Arrow would otherwise have been in storage. The evidence, however, shows that repairs were performed in the spring, summer, and late fall. This is not necessarily times when the Arrow would have been in storage. Fleetwood also refers to testimony of plaintiff that he did not request a loaner because he did not need one. That testimony, however, refers to a three-day period from July 10 to 13 when chassis repairs were being done, not necessarily all repair periods. *See* March 6, 2000 Transcript of Cross Examination by Ray at 20. Fleetwood also points to testimony of plaintiff's wife that they had not taken vacations in the Arrow during the prior two or three years because they had bought a house and did not have the money for a vacation. That, however, refers to a time period subsequent to the warranty period. In any event, the jury instructions as to loss of use only required a showing that the

---

5. Also counting days that the Arrow was not actually in the shop but nevertheless inoperable, plaintiff contends the total days of unavailability is 150 days. Fleetwood does not attempt to dispute that the evidence supports such a finding. In any event, the exact number of days is not crucial.

Arrow was unavailable, not a showing as to how the Arrow would have been used if available or a showing that cover was instead obtained. Case law is in accord with the instruction. *See Azimi v. Ford Motor Co.*, 977 F.Supp. 847, 853 (N.D.Ill.1996) (consumer fraud act); *First Chicago Gary–Wheaton Bank v. Gaughan*, 275 Ill. App.3d 53, 211 Ill.Dec. 553, 655 N.E.2d 936, 942 (1995), *appeal denied*, 165 Ill.2d 549, 214 Ill.Dec. 858, 662 N.E.2d 424 (1996) (wrongful replevin); *Gent v. Collinsville Volkswagen, Inc.*, 116 Ill.App.3d 496, 72 Ill.Dec. 62, 451 N.E.2d 1385, 1390 (1983) (consumer fraud act); *Fairchild v. Keene*, 93 Ill.App.3d 23, 48 Ill.Dec. 475, 416 N.E.2d 748, 749–50 (1981) (automobile accident); *McCabe v. Chicago & N.W. Ry. Co.*, 215 Ill.App. 99 (1919) (common carrier's delay in delivery). Plaintiff presented adequate proof of the fifth element.[6]

Last, Fleetwood argues that plaintiff is not entitled to loss of use damages because its warranty excludes consequential damages. The warranty specifically includes loss of use as a type of consequential damages that is excluded. Plaintiff does not disagree with Fleetwood's contention that the exclusion was adequately conspicuous. Plaintiff, however, contends that the exclusion is not enforceable when, as here, the warranty fails of its essential purpose because timely and adequate repair work was not performed. The parties agree that, on this issue, Magnuson–Moss incorporates Illinois law. The question of enforceability of the exclusion is for the court.

▓ Here, the warranty obligated Fleetwood (either directly or through the dealer, Crystal Valley) "to repair or replace any parts necessary to correct defects in material or workmanship." The jury found that Fleetwood failed to repair or replace the parts within a reasonable number of attempts. Where a seller or manufacturer fails to perform adequate re-

pairs within a reasonable period of time, the warranty fails of its essential purpose. *Intrastate Piping & Controls, Inc. v. Robert–James Sales, Inc.*, 315 Ill.App.3d 248, 248 Ill.Dec. 43, 733 N.E.2d 718, 725 (2000); *Global Link Communications, Inc. v. Homisco, Inc.*, 1998 WL 774981 *5 (N.D.Ill. Oct. 27, 1998); *Lefebvre Intergraphics, Inc. v. Sanden Machine Ltd.*, 946 F.Supp. 1358, 1370 (N.D.Ill.1996). The verdict of the jury estops the court from reaching any finding other than that the repairs were not performed in a timely and adequate manner. *See Melendez v. Illinois Bell Telephone Co.*, 79 F.3d 661, 669 (7th Cir.1996); *McKnight v. General Motors Corp.*, 973 F.2d 1366, 1370 (7th Cir.1992), *cert. denied*, 507 U.S. 915, 113 S.Ct. 1270, 122 L.Ed.2d 665 (1993); *Snider v. Consolidation Coal Co.*, 973 F.2d 555, 559 (7th Cir.1992), *cert. denied*, 506 U.S. 1054, 113 S.Ct. 981, 122 L.Ed.2d 134 (1993). It must be found that the warranty failed of its essential purpose.

Absent subsequent Illinois case law to the contrary, this court is bound to follow the Seventh Circuit's construction of Illinois law. *Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731, 734 (7th Cir.1986); *Brusilovsky v. Figgie International*, 1995 WL 330809 *4 (N.D.Ill. May 30, 1995). Most recently, in *Smith v. Navistar International Transportation Corp.*, 957 F.2d 1439, 1443–44 (7th Cir.1992), the Seventh Circuit held that a warranty failing of its essential purpose does not automatically invalidate a damages limitation contained in the warranty. *See also AES Technology Systems, Inc. v. Coherent Radiation*, 583 F.2d 933, 941 (7th Cir.1978); *Global Link*, 1998 WL 774981 at *5–6. The parties do not cite and this court has not found any subsequent Illinois case law to the contrary. *Smith* will be followed.

▓ "An analysis to determine whether consequential damages are war-

---

6. Fleetwood does not dispute that, as long as loss of use is proven, plaintiff is also entitled to damages for aggravation. *See McGrady v.*

*Chrysler Motors Corp.*, 46 Ill.App.3d 136, 4 Ill.Dec. 705, 360 N.E.2d 818, 821–22 (1977).

ranted must carefully examine the individual factual situation including the type of goods involved, the parties and the precise nature and purpose of the contract. The purpose of the courts in contractual disputes is not to re-write contracts by ignoring parties' intent; rather, it is to *interpret the existing contract as fairly as possible when all events did not occur as planned.*" *Smith*, 957 F.2d at 1443 (quoting *AES*, 583 F.2d at 941) (emphasis in *Smith*). "[I]n those situations where the limited warranty fails to provide the benefits that the buyer expected (i.e., to repair or replace defective parts) and the parties are clearly on unequal terms with respect to relative bargaining power, the case-by-case approach enunciated in *AES* enables courts to examine '[t]he intent of the parties, as gleaned from the express provisions of the contract and the factual background' to determine whether consequential damages are warranted." *Smith*, 957 F.2d at 1444 (quoting *AES*, 583 F.2d at 941).

Here, the warranty was not negotiated. The warranty was form language provided by Fleetwood and for which no opportunity to negotiate was provided. Plaintiff, an individual purchaser of a motor home to be used for pleasure, not business, had no bargaining power. The warranty was not specifically negotiated and the situation is not one where the buyer would have believed it was negotiable. This case is distinguishable from *Smith*, where the purchaser of a semi-tractor truck to be used in a business was an experienced, independent operator of long distance trucks who visited at least six truck dealers, submitted a list of 16 specifications that he insisted be satisfied, and who read the applicable warranty and disclaimer without raising any questions or objections. On the other hand, it must be considered that the present case is not a situation where the repairs were never accomplished. This court is bound by the jury's finding that there was no diminishment of value. Therefore, although the repairs were per-

formed in a dilatory manner, they were ultimately successful. Plaintiff did eventually receive the motor home he had bargained for. But that only occurred after being without the Arrow for 75 to 150 days during the first year of ownership. If plaintiff is not entitled to consequential damages, there would be no compensation to plaintiff (and no detriment to Fleetwood) for Fleetwood failing to act in a timely manner. The statutorily mandated promise to perform repairs in a timely manner[7] would then be for naught. It is, however, appropriate to assume that the parties intended that the promise to perform repairs in a timely manner would be enforceable. Suing for injunctive relief likely would have been impractical. Instead, the only way to make the promise enforceable would be to ignore the exclusion of consequential damages and compensate plaintiff for his loss of use. In light of the parties' unequal bargaining power and the implicit purposes of the warranty, the exclusion will not be enforced and plaintiff is entitled to damages for loss of use.

The jury's verdict will not be overturned. Fleetwood's motion for judgment as a matter of law will be denied.

*Plaintiff's Motion to Amend the Judgment*

In plaintiff's motion to amend the judgment, he seeks to replace the jury's verdict with the equitable remedy of refund and rescission. Plaintiff relies on 15 U.S.C. § 2304(a)(4), which provides in part: "if the product (or a component part thereof) contains a defect or malfunction after a reasonable number of attempts by the warrantor to remedy defects or malfunctions in such product, such warrantor must permit the consumer to elect either a refund for, or replacement without charge of, such product or part (as the case may be)." Because the jury found that Fleetwood failed to repair or replace parts within a reasonable period of time, plaintiff contends he has an absolute right to elect

7. *See* 15 U.S.C. §§ 2304(a)(1); 2304(e).

a refund for the Arrow. Under plaintiff's theory, he would return the Arrow and then be compensated by a refund of his trade-in credit and installment payments he has already made and forgiveness or the payoff of his remaining debt on the installment loan for the Arrow.

 Section 2304(a)(4) provides a consumer with the right to request a refund any time a repair is not performed within a reasonable number of attempts. *See* Barkley Clark & Christopher Smith, *The Law of Product Warranties* ¶ 20.08[3] (1984); *Gochey v. Bombardier, Inc.*, 153 Vt. 607, 572 A.2d 921, 922 (1990) (*dictum*); *Hibbs v. Jeep Corp.*, 666 S.W.2d 792, 798 (Mo.App.), *cert. denied*, 469 U.S. 853, 105 S.Ct. 177, 83 L.Ed.2d 111 (1984). The statute authorizing a right of action under Magnuson–Moss allows the consumer to "bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). The refund and rescission that plaintiff seeks is a form of equitable relief. *Sadat v. American Motors Corp.*, 104 Ill.2d 105, 83 Ill.Dec. 577, 470 N.E.2d 997, 1000–02 (1984). *Cf. Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 325, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999); *Federal Trade Commission v. Amy Travel Service, Inc.*, 875 F.2d 564, 571 (7th Cir.), *cert. denied*, 493 U.S. 954, 110 S.Ct. 366, 107 L.Ed.2d 352 (1989); *Clay v. Johnson*, 77 F.Supp.2d 879, 890 (N.D.Ill.1999). Court enforcement of the § 2304(a)(4) right to a refund is equitable relief for which the usual prerequisites of equitable relief apply. *Sadat*, 83 Ill. Dec. 577, 470 N.E.2d at 1002. This includes a requirement that no adequate remedy at law exists. *Id.* Compare also *General Motors Acceptance Corp. v. Jankowitz*, 216 N.J.Super. 313, 523 A.2d 695, 705 (App.Div.1987) (relief under § 2304(a)(4) requires a showing of substantial impairment of value); *Olmstead v. General Motors Corp.*, 500 A.2d 615, 619 (Del.Super.1985) (same). Here, damages for loss of use and related aggravation is

an adequate remedy. Since an adequate remedy exists, plaintiff is not entitled to instead receive equitable relief. Moreover, it would not be an appropriate exercise of equity to order rescission of an $88,000 purchase [8] based on delays depriving plaintiff of only $1,250 worth of use.

 Alternatively, plaintiff contends he is entitled to rescission under the Illinois Commercial Code. *See* 810 ILCS 5/2–714; *Felde v. Chrysler Credit Corp.*, 219 Ill.App.3d 530, 162 Ill.Dec. 565, 580 N.E.2d 191, 198 (1991), *appeal denied*, 143 Ill.2d 637, 167 Ill.Dec. 398, 587 N.E.2d 1013 (1992). Such a remedy, however, is still equitable in nature. *Id.; Peddinghaus v. Peddinghaus*, 314 Ill.App.3d 900, 248 Ill.Dec. 122, 733 N.E.2d 797, 803 (2000), *appeal denied*, 191 Ill.2d 536, 250 Ill.Dec. 459, 738 N.E.2d 928 (2000); *Bond Drug Co. of Illinois v. Amoco Oil Co.*, 274 Ill.App.3d 630, 211 Ill.Dec. 78, 654 N.E.2d 540, 543, *appeal denied*, 164 Ill.2d 558, 214 Ill.Dec. 317, 660 N.E.2d 1266 (1995); *Newton v. Aitken*, 260 Ill.App.3d 717, 198 Ill. Dec. 751, 633 N.E.2d 213, 215 (1994). For rescission to be available, the breach must have been substantial. *Felde*, 162 Ill.Dec. 565, 580 N.E.2d at 197. Additionally, since plaintiff would essentially be revoking acceptance of the Arrow, he must show substantial impairment of its value. *See* 810 ILCS 5/2–608; *Blankenship v. Northtown Ford, Inc.*, 95 Ill.App.3d 303, 50 Ill.Dec. 850, 420 N.E.2d 167, 169–70 (1981); *Stamm v. Wilder Travel Trailers*, 44 Ill. App.3d 530, 3 Ill.Dec. 215, 358 N.E.2d 382, 385–86 (1976); *Collum v. Fred Tuch Buick*, 6 Ill.App.3d 317, 285 N.E.2d 532, 535 (1972); *Priebe v. Automobile Protection Corp.*, 2000 WL 283075 *3 (N.D.Ill. March 7, 2000). *See also Felde*, 162 Ill. Dec. 565, 580 N.E.2d at 193. It is within a court's discretion as to whether or not to grant the equitable remedy of rescission. *Newton*, 198 Ill.Dec. 751, 633 N.E.2d at 215. For the same reasons that it was inappropriate to grant the equitable relief

---

**8.** Including taxes and fees, the cash price was approximately $92,000.00.

of refund under Magnuson–Moss, it would be inappropriate to grant the equitable relief of rescission under the Illinois Commercial Code.

Plaintiff's motion to amend the judgment will bé denied.

*Fleetwood's and Crystal's Motion for Costs and Attorney Fees*

Fleetwood and Crystal Valley, who were jointly represented by the same counsel throughout this litigation, petition for costs and attorney fees. Crystal Valley primarily relies upon Fed.R.Civ.P. 54. Fleetwood relies on an offer of judgment that plaintiff did not accept. *See* Fed.R.Civ.P. 68. On November 19, 1999, Fleetwood and Crystal Valley served a single, joint offer of judgment which stated the following: "Defendants, Fleetwood Motor Homes of Indiana, Inc. (improperly sued as "Fleetwood Motor Homes") and Crystal Valley RV, Inc., hereby extend to the plaintiff an offer of judgment in the amount of $10,001.00, together with costs accrued to date, under Rule 68, FEDERAL RULES OF CIVIL PROCEDURE." Plaintiff did not accept the offer.

 Under Rule 68, "[i]f the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." Fleetwood contends that its offer of judgment was more favorable than the $5,000.00 verdict upon which judgment was entered as against Fleetwood. The burden is on Fleetwood to show that its offer was more favorable. *Gavoni v. Dobbs House, Inc.*, 164 F.3d 1071, 1075–76 (7th Cir.1999). The burden is on the offeror to make a clear and precise offer that will be readily comparable to any judgment that may be obtained. *See id.* at 1076–78. "[A] defendant should state his intentions clearly, and any failure to do so will be at his peril." *Id.* at 1076

(quoting *Chambers v. Manning*, 169 F.R.D. 5, 8 (D.Conn.1996)). In determining the meaning of the offer, the court is to look to the language of the offer and not consider possible extrinsic evidence. *Gavoni*, 164 F.3d at 1076. Because the offer was drafted by Fleetwood, any ambiguities are to be construed against it. *Id.* at 1076 n. 1; *Webb v. James*, 147 F.3d 617, 623 (7th Cir.1998).

Plaintiff contends the offer should be construed as meaning a total of $10,001.00, with nothing additional being offered for costs and/or attorney fees. Plaintiff represents that, up to November 19, 1999, his costs and attorney fees totaled $19,379.50.[9] Since Magnuson–Moss provides for an award of attorney fees to a prevailing plaintiff, plaintiff contends that the proper number to compare to the $10,001.00 offer is the costs and fees plus the $5,000.00 verdict, which is a total of $24,379.50. Since the offer was less than this, plaintiff contends that the cost-shifting provision of Rule 68 does not apply.

It is clear that the offer of judgment was for more than just $10,001.00. The offer states "$10,001.00, together with costs accrued to date." This is a clear statement that costs were to be in addition to the $10,001.00, not that the $10,001.00 already included costs. *Jolly v. Coughlin*, 1999 WL 20895 *4 (S.D.N.Y. Jan. 19, 1999). *See, e.g., Fisher v. Kelly*, 105 F.3d 350, 352 (7th Cir.1997). The offer of judgment covered whatever costs had accrued up to November 19.

 When the term "costs" is used in an offer of judgment, it is to be read as including all amounts awardable as "costs" under the applicable statute. *Marek v. Chesny*, 473 U.S. 1, 9, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985); *Fisher*, 105 F.3d at 352. The fee-shifting provision of Magnuson–

---

9. Plaintiff makes no attempt to segregate out any fees or costs that may have related only to the claims against Ford or claims against Crystal Valley. Resolution of the offer of judgment issue, however, does not require a determination of the fees and costs that had

been incurred by November 19, 1999. To the extent a determination is necessary to the resolution of this issue, though, it may safely be assumed that the awardable fees as of November 19, 1999 were $5,001.01 or more.

Moss provides: "[i]f a consumer finally prevails ..., he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate." 15 U.S.C. § 2310(d)(2). In *Marek*, the court looked to the "plain meaning" of Rule 68 and 42 U.S.C. § 1988, which was the fee-shifting provision at issue in that case. 473 U.S. at 9–10, 105 S.Ct. 3012. The dissent categorized fee-shifting statutes as falling into three categories. *See id.* at 23–24 & n. 17, 43–51, 105 S.Ct. 3012 (Brennan, J., dissenting). One category was those statutes that refer to attorney fees "as part of the costs." *See id.* at 43, 44–48, 105 S.Ct. 3012. The second category was those statutes that do not refer to attorney fees as part of costs. *See id.* at 43–44, 105 S.Ct. 3012; 48–51. The last category is those statutes in which the plain meaning is not clear as to whether attorney fees are costs. *See id.* at 23 n. 17, 44, 105 S.Ct. 3012; 51. The last category of statutes generally provide for an award of "costs and expenses, including attorney's fees." *Id.* at 44, 105 S.Ct. 3012. Justice Brennan included Magnuson–Moss in the last category. *See id.* at 51, 105 S.Ct. 3012. "It is unclear how the 'plain language' of these provisions interacts with Rule 68. If 'including attorney's fees' is read as referring at least in part to 'costs,' fees awards under these statutes are subject to Rule 68. If 'including attorney's fees' is more naturally read as modifying only the preceding word, 'expenses,' fees awards under these statutes are not governed by Rule 68." *Id.* at 23 n. 17, 105 S.Ct. 3012. *See also id.* at 44, 105 S.Ct. 3012.

Section 2310(d)(2) is slightly different from the language specifically identified in the *Marek* dissent in that § 2310(d)(2) places "including attorneys' fees" in parentheses, not after a comma. The "including attorneys' fees" phrase, however, still follows immediately after "costs and expenses." In *Utah International Inc. v. Department of Interior*, 643 F.Supp. 810 (D.Utah 1986), the defendant argued that the court's local rule regarding the time limit for filing a motion to tax costs should apply to the plaintiff's motion for attorney fees because, according to the defendant, such fees were costs under the applicable fee-shifting statute. The fee-shifting provision at issue in that case was § 525(e) of the Surface Mining Control and Reclamation Act ("SMRCA"), 30 U.S.C. § 1275(e).[10] Section 525(e) provides: "Whenever an order is issued under this section, or as a result of any administrative proceeding under this chapter, at the request of any person, a sum equal to the aggregate amount of all costs and expenses (including attorney fees) as determined by the Secretary to have been reasonably incurred by such person for or in connection with his participation in such proceedings, including any judicial review of agency actions, may be assessed against either party as the court, resulting from judicial review or the Secretary, resulting from administrative proceedings, deems proper." Construing its own local rule, the *Utah International* court held that "costs," as used in the local rule, referred only to statutory costs that may be taxed routinely by the clerk of the court. *Utah International*, 643 F.Supp. at 815–16. *See* 28 U.S.C. § 1920; Fed.R.Civ.P. 54(d)(1). Alternatively, even applying the Rule 68 analysis of *Marek*, the court construed § 525(e) as not defining attorney fees as being a type of cost under the statute.

> ... Section 525(e) of SMRCA, unlike 42 U.S.C. § 1988, does not define "costs" to include attorney's fees. Rather, Sec-

---

10. The *Marek* dissent identifies this statute as one of those falling into the third category.

*See Marek,* 473 U.S. at 51, 105 S.Ct. 3012 (Brennan, J., dissenting).

tion 525(e) authorizes an award of "all costs and expenses (including attorney fees)." 30 U.S.C. § 1275(e). Not only does Section 525(e) refer to expenses separately from "costs," the reference to "attorney's [sic] fee" is placed adjacent to the term "expenses" rather than the term "costs." According to the statutory construction doctrine of last antecedent, such a placement indicates a legislative intention that "attorney's [sic] fees" be construed as "expenses," rather than as "costs." *See Azure v. Morton,* 514 F.2d 897, 900 (9th Cir.1975). Even for purposes of Fed.R.Civ.P. 68, therefore, "costs" does not necessarily include attorney's fees in an action brought pursuant to Section 525(e) of SMRCA.

*Utah International,* 643 F.Supp. at 815.

In pertinent part, the language of § 525(e) is identical to the language contained in § 2310(d)(2). This court agrees with *Utah International* that the plain meaning of such statutory language is that attorney fees are not defined as "costs." Instead, they are defined as "expenses." Therefore, the offer of judgment in the present case should be construed as offering $10,001.00 plus accrued statutory costs, but no additional amount for accrued attorney fees. Under that narrow view, the offer of judgment did not exceed the judgment plaintiff actually obtained, $5,000.00, plus accrued costs, plus more than $5,001.00 of accrued attorney fees.

But there is another slant to consider. Where the offer of judgment does not expressly state that attorney fees are already included in the sum offered and the offer does not state that attorney fees are to be an addition to the sum offered, in other words when the offer of judgment is silent as to attorney fees, the offeree is still entitled to attorney fees to the extent provided by statute. *Webb,* 147 F.3d at 617. Had plaintiff accepted the offer of judgment, he could have petitioned for attorney fees as well. He would still have had to show that the settlement constituted his prevailing in the litigation, *see* *Fisher,* 105 F.3d at 352–53 (where a settlement that is accepted is a technical or de minimis recovery, plaintiff is not a prevailing party), and that the fees requested were reasonable in light of the result. It would appear, though, that a fee award would have been appropriate. If so, the judgment offered would have resulted in plaintiff receiving $10,001.00, plus statutory costs, plus accrued attorney fees and expenses. Overall, that would have been more favorable than the $5,000.00 judgment actually obtained, plus costs, attorney fees, and expenses.

The preceding discussion, however, ignores an additional ambiguity that is contained in the offer of judgment. That ambiguity is fatal to Fleetwood's contention that it is entitled to cost-shifting under Rule 68. The $5,000.00 judgment, plus any costs and fees that are to be awarded, are against Fleetwood alone. Fleetwood, however, is not the lone offeror on the offer of judgment. The offer was for settlement of the claims of both Fleetwood and Crystal Valley. Defendants failed to specify how much was being offered from each defendant. Without knowing how much was being offered from each defendant, there is no precise number to compare with the $5,000.00 judgment that was entered against Fleetwood alone. There being no comparable number, the cost-shifting provision of Rule 68 cannot be applied. *See Johnston v. Penrod Drilling Co.* 803 F.2d 867, 870 (5th Cir.1986); *Gavoni,* 164 F.3d at 1076–77. This is not a mere technical error. If it were to be assumed that each defendant was to be apportioned half the offer, then Fleetwood's individual offer would have exceeded the jury's verdict by $.50. But such an assumption is not consistent with the circumstances. Crystal Valley was potentially liable for problems with both the chassis and the coach. Fleetwood could only be liable for problems with the coach. Therefore, if speculation were appropriate, the reasonable assumption would be to apportion Fleetwood less than half of the offered amount, in

which case Fleetwood's offer would have been less than the judgment obtained following trial.[11] In any event, because Fleetwood failed to satisfy its burden of making a sufficiently precise offer, Rule 68 cannot be applied. *Gavoni*, 164 F.3d at 1076–77.

Because Fleetwood has not shown that its offer of judgment was more favorable than the judgment finally obtained, plaintiff is not precluded from seeking post-offer costs and fees and Fleetwood is not entitled to costs or fees.[12]

▮ Crystal Valley prevailed as to the claims against it. Citing only to Fed.R.Civ.P. 54 and without quite explaining why, Crystal Valley contends it is entitled to attorney fees. The attorney fee provision of Magnuson–Moss is limited to awarding fees to prevailing consumers. 15 U.S.C. § 2310(d)(2); *State Farm Fire & Casualty Co. v. Miller Electric Co.*, 231 Ill.App.3d 355, 172 Ill.Dec. 890, 596 N.E.2d 169, 171–72 (1992); *Hanson v. Signer Motors, Inc.*, 105 Or.App. 74, 803 P.2d 1207, 1211 (1990); *Black v. Don Schmid Motor, Inc.*, 232 Kan. 458, 657 P.2d 517, 531–32 (1983). Therefore, Crystal Valley cannot be entitled to fees under Magnuson–Moss. Rule 68 also cannot be a basis for an award of attorney fees to Crystal Valley. Since plaintiff was unsuccessful in obtaining a judgment against Crystal Valley, Rule 68 is inapplicable to Crystal Valley's request for costs and fees. *Poteete v. Capital Engineering, Inc.*, 185 F.3d 804, 806 (7th Cir.1999); *Amati v. City of Woodstock*, 176 F.3d 952, 957 (7th Cir.), *cert.*

*denied,* — U.S. —, 120 S.Ct. 445, 145 L.Ed.2d 362 (1999). This is true even though a judgment was obtained against another defendant. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 334 (5th Cir.), *cert. denied*, 516 U.S. 862, 116 S.Ct. 173, 133 L.Ed.2d 113 (1995). Even if Rule 68 did apply to Crystal Valley, costs under Rule 68 would not include attorneys fees of a Magnuson–Moss defendant. Last, there is no contention by Crystal Valley that it is entitled to fees because plaintiff's claims against it were frivolous. *See* Fed.R.Civ.P. 11. Crystal Valley will not be awarded fees.

▮ As a prevailing party, Crystal Valley would be entitled to its statutory costs. Crystal Valley, however, was represented by the same attorneys that represented Fleetwood, which is not entitled to its costs. Crystal Valley makes no attempt to apportion costs between it and Fleetwood. Crystal Valley's and Fleetwood's joint motion requests $1,141.52 in costs. Although Crystal Valley would be entitled to all its costs, the claimed costs are all represented to have been incurred subsequent to the November 19, 1999 offer of judgment. Moreover, the bill of costs that is submitted (Exhibit B to the joint motion) is a bill of costs on behalf of Fleetwood, not Crystal Valley. Since no timely bill of costs was submitted, Crystal Valley could be denied all costs. Plaintiff, however, concedes that he and the three defendants apportioned a bill for duplication services for trial. Plaintiff concedes that the share paid by Crystal Valley was $258.40. Plain-

---

**11.** The present case is distinguishable from *Jolly*, 1999 WL 20895 at *6–7. In that case, no matter how many defendants were liable, it would have resulted in joint and several liability for the same amount. That is not the case here, where it would have been necessary to separately consider damages related to the chassis and assess different amounts of damages as to Fleetwood and Crystal Valley.

**12.** Even if Fleetwood's offer of judgment had been shown to be more favorable than the judgment finally obtained, Fleetwood would not have been entitled to its post-offer attorney fees. Section 2310(d)(2) does not provide

for an award of attorney fees to a party that is not the consumer. *State Farm Fire & Casualty Co. v. Miller Electric Co.*, 231 Ill.App.3d 355, 172 Ill.Dec. 890, 596 N.E.2d 169, 171–72 (1992); *Hanson v. Signer Motors, Inc.*, 105 Or.App. 74, 803 P.2d 1207, 1211 (1990); *Black v. Don Schmid Motor, Inc.*, 232 Kan. 458, 657 P.2d 517, 531–32 (1983). Therefore, costs under Rule 68 cannot be understood to include the attorney fees of a defendant in a Magnuson–Moss case. *Cf. Poteete v. Capital Engineering, Inc.*, 185 F.3d 804, 807–08 (7th Cir.1999).

tiff also concedes that Crystal Valley paid $138.09 as its share of court reporting costs. Since plaintiff concedes both that these amounts were paid by Crystal Valley and that they are compensable costs, Crystal Valley will be awarded $396.49 in costs.

*Plaintiff's Motion for Attorney Fees and Costs*

 Plaintiff requests $46,342.55 in attorney fees and costs as against Fleetwood. This represents 187.4 attorney hours for a lodestar of $30,450.50, with a multiplier of 1.5 that brings the fee amount to $45,675.75. Costs total $666.80. Fleetwood does not dispute that the hours claimed and the rates used are reasonable.[13] Fleetwood, however, opposes the use of a multiplier. Fleetwood also argues that the amount awarded should be reduced in light of the amount of the judgment and to take into account the other claims upon which plaintiff was not successful.[14]

In *Skelton v. General Motors Corp.*, 860 F.2d 250 (7th Cir.1988), *cert. denied*, 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989), the Seventh Circuit considered a fee award in a Magnuson–Moss case that had been settled. The Seventh Circuit held that common fund rules applied, not § 2310(d)(2). *Id.* at 255–56. In *dictum*, the Seventh Circuit concluded that, even if § 2310(d)(2) applied, it would not preclude the use of a multiplier. *See id.* at 256–57. The Seventh Circuit quoted the only legislative history regarding the Magnuson–Moss fee provision, which includes these remarks: "It should be noted that an attorney's fee is to be based upon actual time expended rather than being tied to any percentage of the recovery. This requirement is designed to make it economi-

cally feasible to pursue consumer rights involving inexpensive consumer products." *Id.* at 256 n. 7 (quoting S.Rep. No. 986, 1st Sess. 21, 117 Cong. Rec. 39614 (1971)). Discussing the statutory language "including attorneys' fees based on actual time expended," the Seventh Circuit reasoned:

> In our view, these words do not preclude a risk multiplier. Instead, they indicate Congress' intent that attorneys' fees be computed on an hourly basis "rather than being tied to any percentage of recovery." S.Rep. No. 986, 92d Cong., 1st Sess. 21, 117 Cong. Rec. 39614 (1971). Because a risk enhancer is· applicable to the lodestar-it multiplies the lodestar by a number representing the probability of loss-it is based on the number of hours the attorneys worked and not the size of plaintiffs' recovery. Thus a risk multiplier is "based on actual time expended."

*Skelton,* 860 F.2d at 257.

 Finding this *dictum* persuasive, the "based on actual time expended" language of § 2310(d)(2) does not preclude the use of a multiplier. However, case law subsequent to *Skelton* holds that it is inappropriate to apply a multiplier under any federal fee-shifting statute. *City of Burlington v. Dague,* 505 U.S. 557, 567, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992); *Barrow v. Falck,* 977 F.2d 1100, 1105 (7th Cir.1992); *Cook v. Niedert,* 142 F.3d 1004, 1014 (7th Cir.1998). Therefore, plaintiff cannot be entitled to a fee multiplier in the present case. *Messana v. Mercedes–Benz of North America, Inc.,* 2000 WL 988163 *3 (N.D.Ill. July 18, 2000).

As previously indicated, the statute provides that fee awards are to be based on time actually expended and legislative history supports that the fee award is not to

---

**13.** In light of the significant number of disputes that arose during the pretrial proceedings in this case, it is surprising that the lodestar in this case is as low as it is. Plaintiff's counsel are to be commended for their efficiency in litigating this case.

**14.** Fleetwood also contends that plaintiff was not a prevailing party and that fees and costs should be reduced in accordance with Rule 68. These contentions repeat arguments contained in Fleetwood's motion for judgment as a matter of law and motion for costs and attorney fees, all of which were rejected as discussed above.

be tied to a percentage of the recovery. Therefore, as long as the time expended was reasonable, it would be inappropriate to reduce the fee award because it might be considered disproportionate to the $5,000.00 in damages that plaintiff actually recovered. No reduction will be made solely based on the amount of damages plaintiff obtained.

Separate from consideration of the amount of damages obtained, the hours for which plaintiff seeks compensation include hours that were expended on claims made against Crystal Valley and Ford. They also include hours expended on the Count II implied warranty claim against Fleetwood that was dismissed prior to trial, *see Fleetwood I,* 1999 WL 999784 at *1, and hours expended on the unsuccessful attempt to obtain refund and rescission relief. Fleetwood should not be required to compensate plaintiff for attorney time devoted to claims against other defendants and unsuccessful claims against Fleetwood itself.

The basic rule is that fees should be awarded for any work that would have had to be done even if the unsuccessful claims had not been pursued. *See Estate of Borst v. O'Brien,* 979 F.2d 511, 516 (7th Cir.1992); *Ustrak v. Fairman,* 851 F.2d 983, 988 (7th Cir.1988). This recognizes that much of what an attorney does is related to the case as a whole, not just specific issues or claims. *See id.* Consistent with this principle, it is appropriate to deny fees for work on unsuccessful motions that did not otherwise advance the case and that was work that would not have been necessary if the party had pursued successful avenues. *See Sands v. Runyon,* 28 F.3d 1323, 1333 (2d Cir.1994) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)) ("The unreasonable expenditure of time includes 'hours that are excessive, redundant, or otherwise unnecessary.'"). *See also Coulter v. State of Tennessee,* 805 F.2d 146, 151 (6th Cir. 1986), *cert. denied,* 482 U.S. 914, 107 S.Ct. 3186, 96 L.Ed.2d 674 (1987); *Duke v. Uniroyal, Inc.,* 928 F.2d 1413, 1425 (4th Cir.), *cert. denied,* 502 U.S. 963, 112 S.Ct. 429, 116 L.Ed.2d 449 (1991); *Castle v. Bentsen,* 872 F.Supp. 1062, 1067 (D.D.C.1995); *General Electro Music Corp. v. Samick Music Corp.,* 1994 WL 87445 *2 (N.D.Ill. March 17, 1994); *Bennett v. Central Telephone Co. of Illinois,* 619 F.Supp. 640, 646–47 (N.D.Ill.1985). The award may be adjusted "either by identifying the specific hours that should be eliminated or by simply reducing the overall award to reflect the plaintiff's limited success." *Spellan v. Board of Education for District 111,* 59 F.3d 642, 646 (7th Cir.1995) (quoting *Illinois Welfare Rights Organization v. Miller,* 723 F.2d 564, 567 (7th Cir.1983)).

Much of the discovery and evidence in this case related to all claims. However, most of the discovery and evidence regarding problems with the chassis would have been unnecessary if the case had been limited to the express warranty claim against Fleetwood.[15] It is unknown how much extra time was devoted to discovery concerning the chassis. Additional counts of the complaint would not have had to have been drafted, but drafting the complaint took only a limited amount of time.[16] If the other claims had not been included in the complaint, plaintiff would not have had to respond to summary judgment because Fleetwood did not move for summary judgment on the written warranty claim. *See Fleetwood I,* 1999 WL 999784 at *1. However, only 5.2 hours of time are claimed for responding to the summary judgment motion. Selecting the jury and presenting the evidence in this case took less than two full trial days. The trial would not have been substantially shorter

---

15. It would only have been relevant to the extent Fleetwood claimed any problem of which plaintiff complained was actually caused by the chassis, not by a problem with the coach.

16. On April 24, 1998, three hours were expended drafting the complaint and doing other tasks.

without the additional claims. Some parts of the pretrial order would have been unnecessary without the additional claims, but, given counsel's efficient work, the number of hours may not be large. The fee petition includes minimal hours for work on the posttrial motions that are related to the unsuccessful claims.[17]

As the preceding discussion indicates, the amount of additional time that was expended because of the additional claims cannot be precisely determined. However, it is clear that it is well less than half the time that plaintiff's counsel worked on this case and likely one-third of the time or less. Perhaps it is somewhere between 20% and 40% of the time expended by counsel. Since the fees claimed are otherwise kept to a minimum by the efficient manner in which plaintiff's counsel worked this case, doubt should be resolved in plaintiff's favor. The lodestar will be reduced by 25%. Plaintiff will be awarded $22,837.88 in attorney fees.

■ Plaintiff seeks only two items of costs. The $150.00 filing fee will be fully reimbursed since he would have had to pay that amount even if the complaint had contained only one count. Plaintiff also seeks reimbursement for his $516.80 share of the cost of duplicating trial exhibits. There were not very many exhibits that concerned only the chassis or another defendant. The duplication costs will be reduced by 10%. Plaintiff will be awarded $615.12 in costs.

IT IS THEREFORE ORDERED that:

(1) Defendant Fleetwood's motion for judgment as a matter of law [107-1] is denied.

(2) Plaintiff's motion to amend the judgment [103-1] is denied.

(3) Defendant Fleetwood's motion for costs [113-1] and attorney fees [113-2] is denied. Defendant Crystal Valley's motion for costs [113-1] is granted in part and denied in part. Defendant Crystal Valley's motion for attorney fees [113-2] is denied. The Clerk of the Court is directed to enter judgment in favor of defendant Crystal Valley RV, Inc. and against plaintiff in the amount of $396.49 in costs.

(4) Plaintiff's motion for attorney fees and costs [105] is granted in part and denied in part. The Clerk of the Court is directed to enter judgment in favor of plaintiff and against defendant Fleetwood Motor Homes in the amount of $23,453.00, representing $22,837.88 in attorney fees and $615.12 in costs.

---

17. The fee petition was prepared prior to the completion of briefing on the pretrial motions. It includes an estimated seven hours for additional work on posttrial motions. Some of that time was for preparing a reply in support of plaintiff's fee petition and for preparing plaintiff's answer to Fleetwood's posttrial motion. The only time that should not be charged against Fleetwood would be time devoted to plaintiff's motion to amend the judgment and time devoted to preparing the less than two-page response to Crystal Valley's motion for fees and costs.